Good morning, Your Honors. Ben Wisner on behalf of James Skinner. With the Court's leave, I would like to spend most of this argument talking about the merits of the constitutional claim, but I would like to begin with the timeliness issue and explain to the Court why I do not think that a remand to the District Court is necessary in order to resolve that issue. The facts at the heart of the dispute over timeliness are not disputed and never have been disputed. Mr. Skinner doesn't dispute that his petition was filed some 90 days late, and the State does not and never has disputed Mr. Skinner's explanation for that delay. Mr. Skinner says that during a period of nearly 8 months, at the heart of his 12-month statute of limitations period, he was three times deprived of all access to legal materials and even to his property. First, for a period of about 100 days when he was in administrative segregation for his own protection and could not go to the law library. Second, during a three-week period when all of his property was packed pending his transfer to another prison. And third, for a period described as from May to August, during which once he had been transferred, he was housed on a general population yard and was not allowed to leave his cell for his own safety and go to the library that was staffed by general population inmates. I want to be clear about this. The State in its appeal, sorry, the State in its response to Mr. Skinner's appeal, does not contest those factual allegations. Rather, at pages 15 and 17 of the State's brief, the State says that those deprivations are routine incidents of prison life, that Mr. Skinner was dilatory in his attempts. The State did not ask below, did not rebut the factual allegations below, and does not say to this Court that it wants an opportunity to rebut those allegations. Rather, the State, citing largely out-of-circuit authority, including out-of-circuit district court authority, says that those allegations in and of themselves don't entitle him to equitable tolerance. Is there – is the State's claim that it was improper for the magistrate judge to proceed to the merits rather than deciding the communist issue first? As I understand it, the State's claim is that they are entitled to an adjudication of that claim before this Court reaches the merits of Mr. Skinner's claim. What is your position with regard to the conceptual question of whether or not they're entitled to an adjudication of that question first somewhere? I don't dispute that. I think the State has raised this claim in every forum in which it could raise it. So in other words, it's – it was not appropriate for the magistrate judge to skip the question? I mean, that's really what I'm asking you. I mean, the magistrate judge had two issues before him for dismissal. One was timeliness, and the other was the merits. He said, I'm not going to bother with timeliness because I'm going to get to the merits. Now, if we have the question before us, could we simply get to the merits and then send it back on timeliness? Or would that be improper because the State does have – there is an obligation to reach the timeliness issue first? Well, I'm not sure it's a question of propriety. It may just be a question of judicial economy. I mean, we now know what the magistrate and district court's view is as to the merits of this dispute. If we were to remand on the equitable tolling issue, either way that issue gets decided below, we'll be back here, either just on the merits or on the merits and on equitable tolling again. This Court has appointed pro bono counsel. Rather than say whether the magistrate was improper in not reaching that issue first, I think we have a dispute and an undisputed factual record before us on the timeliness question. There's an overview anyway of the timeliness issue, and I don't see any reason why I'm asking a slightly different question. Could we decide the merits and not the timeliness and send the timeliness back? Well – Or it's jurisdictional in some sense, and we couldn't do it. The question may be whether it would be an advisory opinion if the district court then decided that equitable tolling did not apply to these facts, then we'd be back on this Court on an appeal just of the equitable tolling issue, the merits having already been decided by this Court. So it's not unusual in general, but it may be unusual when you have a sort of logically prior question. And I'm not sure what the Supreme Court would say on that issue. As you know, the Supreme Court reversed this Court on the question whether during habeas review the Court had to first decide whether there was error and then decide. But you don't have any case law about it, right? I don't. Okay. I don't. I agree it's an unusual set of facts, but I do think and I expect that the Warden will agree that there isn't really a factual dispute here, that what the Warden is saying is that these kinds of deprivations from legal material, this is what all inmates should expect. And I think this Circuit's law on that is quite, quite clear, that even deprivations of legal materials and access to a library for 80 days, like in Lafayette-Mueller, was considered sufficient to toll the statute of limitations. Here we're talking about an extremely disruptive series of events at the very heart of the statute of limitations period that ate up between six and a half and eight months of his 12-month period. And this is a pro se litigant raising a very substantial constitutional claim. And so I think this Court ought to decide the tolling issue in Mr. Skinner's favor on the undisputed record and then move on to address the merits. If there are no more questions on the timeliness issue, I would like to go on to address the merits and explain why I think this is one of those exceedingly rare cases where KBS review is appropriate in striking down a sentence imposed under the two-strikes law. I've looked at the State's papers carefully and at the State court decision in this case, and what I've looked for and not found is any limiting principle. Effectively, what the State is arguing is that under the three-strikes law, any sentence for a term of years imposed on a recidivist is constitutional and cannot be struck down on habeas. And the problem with that is that it would have been very easy for the Supreme Court to say that in Ewing and Andrade. The Supreme Court was directly invited to overturn Solem v. Helm, which is the Court's clearest statement on the question of life without parole for nonviolent felony offenses. And instead, the Court did exactly the opposite. The Court bent over backwards to distinguish each of those cases from Solem v. Helm and explain why, in particular, the availability of parole in all of those cases made constitutional what would have been unconstitutional under Solem v. Helm. And I do think that that one issue, the availability of parole, is really an animating principle that underlies all of the Court's Eighth Amendment jurisprudence in the three-strikes context and in the recidivist context before. So I think for that reason, that is why the State Court in this case had to denigrate Solem v. Helm and say that its continuing vitality had been called into question by Harmelin, and that is in the State Court opinion. And to its credit, Respondent DeWarden has said that there are material similarities between Mr. Skinner's case and Solem, particularly that he has no violent crimes in his history, unlike Mr. Ewing. He's never committed a crime against a person. In this case, quite like Ramirez, the first two strikes occurred 14 years earlier when he was only 20 years old for burglaries for which he did not even go to prison. And that's quite similar to the Ramirez case, where this Court held that the two prior strikes, when Mr. Ramirez only went to county jail rather than prison, really did not qualify. But wasn't, isn't the hardest problem with this case, in light of the recent Supreme Court cases, that in Solem, the triggering offense was fencing a check, and here, the triggering offense was 20 counts of, you know, premeditated, well-thought-out and sequential, although nonviolent, burglaries? Yes. That is the hardest thing about this case. But let's actually take a look at it. Not one, but 20. Well, let's take a look at it with that 20. I mean, even the District Court, sorry, even the State sentencing judge in this case, the same sentencing judge. I think it wasn't 20 different events. It was six or seven events. It was six or seven events. But I do think that's a critical distinction, Judge Berzon, because the State court judge in this case, the same judge who declined to exercise his discretion to strike one of the priors, which, by the way, would not have resulted in his release, but in a prison term of about 16 years. We're not talking about releasing Mr. Skinner. We're talking about whether he's going to die in prison or be released in his 50s or at age 60. Even that judge realized that, at most, we were talking about nine incidents and not 20. All right. So let's say, so let's say nine. Let's say, let's say nine or there was some dispute as to whether it might be fewer. I think that if you look at a collection of nine nonviolent rob or theft offenses, place those in the context of Mr. Skinner's very modest criminal history with very few felonies and one prison term, it's still a solemn case. Solemn was seven nonviolent felonies. Seven nonviolent felonies. Solemn, and, you know, a critical factor in all these cases, as well as in Ewing and Ramirez, is how many times the Petitioner had been incarcerated before and had an opportunity to reform. Here, we have a Petitioner who served two years in state prison on a drug possession count, unlike Ewing, who served nine counts, unlike Rios in a case that the state is going to raise before you, where there had been several prior incarcerations, including one for a theft using a knife. This really is someone who is a nonviolent recidivist theft offender who was sent away with the keys thrown away for a collection of nonviolent rob or theft offenses. And I really do think, I mean, there's a sense in which the state is being somewhat greedy in this case, that it's not enough for the state that Ewing and Andrade essentially give them license to use the three strikes law to impose very harsh sentences on recidivist offenders. They don't want to have any judicial role whatsoever in enforcing the Constitution. I would argue that as in Ramirez, this is an unreasonable application of Solemn. Ramirez had no criminal history except the two, were they burglaries or robberies? They were burglaries, yeah. Which were convicted together and as to which he served a short term. Right. He served, I should add, more time than Mr. Skinner served for his first two strikes. Some time before, some years before. Right. Here, it was 14 years before, and Mr. Skinner had not committed a felony in some 10 years before the triggering offenses. I agree that Ramirez's criminal history was more modest even than Mr. Skinner's. But remember that in Ramirez, this court said that even 25 years to life was unconstitutional and he was released. That actually is not the argument here. The argument here is that life without parole, which has always had independent constitutional significance, has always been a critical distinguishing factor between the cases that were upheld and those that were not. I should point out, I cited in my opening brief in this court, a transcript from the oral argument in the Ewing case, where even the State of California was uneasy with the idea that life without parole for nonviolent offenses would be unconstitutional. But wasn't there also in Andrade, Andrade was 50 years to life, right? Well, I would like to address that, because I think one of the critical factors about Andrade, and if you look at page 71 of that opinion, Justice O'Connor says, we do not reach the question whether the State court erred. This is a habeas case and the precise contours of our rule are not clear, so we're not even going to get there. Well, on the same day, the Court decided Ewing, where, for better or for worse, it did lay out those contours, did reaffirm the vitality of solemn, did say that Justice Kennedy's concurrence in Harmelin was the law. And so this really is not Andrade for that reason. In Andrade, the Court, I mean, you can read that opinion, but there really is no analysis as to whether the sentence was constitutional, so. But that doesn't work here, does it? Because this person is essentially in the Andrade position, i.e., this is an IHPA case, and whatever was being laid out about the law in Ewing was the law as of now, not the law as of then. So why is this person, why is Skinner in a better position than Andrade? I don't agree with that. I just don't agree with that characterization, Judge Burson. I think what was that issue in Andrade as to whether the application had been reasonable is there had been so many cases by the Supreme Court. There had been Rummel, there had been Solemn, there had been Harmelin, and the State courts were citing one. But what I'm saying is when was the habeas in this case, State habeas, the State determination on the corollary and unusual punishment? The State proceedings became final on October 25th, 2001. Sorry, October 25th, 2000, in this case. So before Ewing. Right. So what I'm not understanding, and I'm sure you have a point, but I'm missing it, is why we don't judge this habeas by the same standard by which Andrade was judged. That's an excellent question. Yeah. You know, I'm not, perhaps I'm rebuttal when my brain unfreezes, I'll have a better answer to that than just to stammer up here. But that's not happening right now. But let me point out a few other distinctions with Andrade. I mean, Andrade, as the Andrade court pointed out, and as Judge Wardlaw pointed out in Ramirez, had quite an extensive criminal history. He had been sentenced to lengthy prison terms on three occasions. But what I was responding to was your assertion that they weren't looking at Andrade as a life sentence. But it was pretty much a life sentence. All the way through the case, the statement was being made that this is a life sentence. You and I think that. Although, if you read the majority opinion in Andrade, or I should say the plurality opinion in Andrade, the court says this case falls between Rummel and Solemn. In Rummel, there was parole available. In Solemn, there was not. Here, there is parole available. Now, that parole was available at a very late age, but unlike in this case, an age that would be far later. The difference between very unlikely and impossible. Yeah. And it's a difference that the state court in this case didn't respect when it wrote that Mr. Skinner probably would never be released from prison. Notwithstanding that his earliest parole date is 2223. If the court doesn't have any more questions, I'd like to reserve the rest of my time for rebuttal. All right. Very well. Thank you. Good morning. May it please the court. Deputy Attorney General Kenneth Byrne on behalf of Respondent Napoli. I'd like to correct one statement that was made by my opposing counsel this morning. The state's position is not that the Eighth Amendment does not preclude a sentence under the Three Strikes Law. There may be examples where, even under AEDPA, and even in this court's supervisory role in habeas corpus, where a statute could cross the line into unconstitutionality. So, we're not making some big, broad, expansive argument in this case. I do think, however, that when you keep in mind the Supreme Court's decisions in Lockyer, which have been discussed this morning, and Ewing as well, but the key thing is that you have to view this case on its merits, and on the facts, and on the defendant's prior convictions, and on the current offenses. All the cases involve different fact patterns and different priors. Ewing had a certain number of priors, and Andrade had a certain number of priors, and Ramirez had a certain number, and this defendant had a certain number. I would like to point out that I don't agree that this defendant had a minor criminal history. His criminal conviction, his criminal convictions spanned a period of 17 years. His first conviction was in 1982, and the current convictions were in 1999. In between that time, he had the qualifying strike offenses, which were first-degree residential burglaries. He broke into somebody's house to steal their goods to buy drugs. He made sure no one was home first, probably to avoid being interrupted while he was stealing. But the point is, homeowners come home all the time and interrupt burglaries. I've had cases like that myself, and I remember very specifically in the early part of my career, a gruesome photograph issue where an elderly man came home, surprised a burglar, and was beaten to death in his living room. So that happens all the time. Security guards respond to silent alarms, and there's violence. But even leaving aside the strikes, and I would like to say also, this defendant has had his share of chances. On the strike offenses, he was given what is referred to as CRC, drug treatment within the California Department of Corrections, and he quote-unquote successfully completed that program. Well, the next thing you know, he gets convicted of possession of narcotics and gets sentenced to state prison for two years. That's how successful it was. That was not his only narcotics conviction, by the way. And in fact, even though it wasn't a violent crime against a person, in 1996, three years before these offenses, he was convicted of carrying a loaded firearm in a public place despite his fact that he was an ex-con. Now he didn't shoot anybody, true, but the point is, that's something that gives rise to a risk of danger to other human beings. I intended to start my comments this morning regarding the sexual limitations argument, and I just briefly wanted to touch on that in the few minutes that I have. We are entitled to a determination on that issue. We briefed the issue in the district court, and we briefed it again here. So tell me sort of conceptually why. Is it because you regard it as jurisdictional? In other words, you have two bases on which you could possibly win. That's not unusual. One is a limitations period, and the other one's the merits. The magistrate judge apparently thought that the merits were easier than the limitations period to decide, so he decided to decide the merits. And you're saying essentially he couldn't do that, and we can't do it. Why? Your Honor, I actually do not have a problem with the district court evaluating the merits before the statute of limitations, as long as we're not deemed to have waived it. I know that in some cases, the statute of limitations is thorny. In some cases, it requires an evidentiary hearing. In some cases, the merits are easy to resolve. And I think that, in light of the Supreme Court authority, I think this case is relatively easy to resolve. Having said that, we didn't object in the district court to briefing the merits. We ordered to do it, we did it, and I don't think that was inherently wrong for the district court to do. I do think, however, that we are entitled to a determination from this Court. If the Court were to go to the eighth amendment issue and were inclined to grant relief, I do think that as a threshold matter, we have a right to a determination on that. Your argument is that he could dismiss, and this may be plausible, that he could dismiss another grant, but he couldn't grant on the merits without deciding. Neither he nor we could grant on the merits before the limitations period is decided. Yes. Yes, I am saying that, Your Honor. And that's by analogy under AEDPA. AEDPA says that the Court can deny an unexhausted claim on the merits, but it can't grant relief. I'm not necessarily saying that the statute of limitations is jurisdictional, because rolling around in my head, some court has said that the statute of limitations is not jurisdictional, but it is a threshold matter that should be resolved. And if I could just briefly talk about the equitable tolling issue. The facts are not disputed. The reason the defendant was an ad seg. Let me ask, if it's not jurisdictional, it can be waived, can it? Yes, Your Honor, it can. And I thought you said you had waived it. No, I did not say that, Your Honor. I'm sorry if I did. But we asserted in the district court, we asserted it on appeal here. What I said was, we didn't have any problem with briefing the merits in order to do so by the magistrate judge, but we never withdrew that defense, and we asserted it every chance that we could. To touch on the equitable tolling position, the defendant was an ad seg at his own request, because he welched on the $2,000 drug debt. That's in our supplemental excerpts of record at pages 95 and 96. That does not constitute an extraordinary circumstance beyond a prisoner's control that makes it impossible for him to file a petition on time. That's something that's entirely within his control, and I think that that clearly shows that the equitable tolling doctrine does not apply in this case, and that the petition was definitely untimely. In the few minutes that I have left talking about the welching on the drug debt in prison, the one thing I think was pointed out properly in my opponent's reply brief was, we didn't discuss Ramirez quite enough in our brief, so I'd like to spend the time I have left talking about this case, showing how very different this case is from Ramirez. And leaving aside the obvious fact that the defendant here was convicted of 20 felony offenses, which spanned a period of several months, by the way, and it wasn't to some... Which water, sorry? I'm sorry? Which water? Spanned a period of several months. It wasn't the defendant didn't break into six lockers on one day, you know, 9 o'clock and 10 o'clock and 11 o'clock. If he had been convicted, the 240 years to life... 225. I mean, 225, okay, resulted from the number of triggering offenses, right? In other words, if he had been convicted of one of these offenses, it would have been 25 to life. Correct. Then he would have been Mr. Ewing or Mr. Ramirez or Mr. Rios. So the fact that this is a live sentence is directly tied to the fact that there were a lot of current crimes instead of just one. Yes, Your Honor. California law requires that when multiple current offenses, not the strikes, but the current offenses, when the current offenses were committed in different transactions, different times and different places, it's mandatory consecutive sentences. So it could be, you know, if a defendant had 1,000 current offenses, I'm not that sure, but it could be a big number. Is that because of the priors or it's true anyway? As long as the defendant has two or more prior qualifying strikes on his hand, the current offenses are over here. And if there's one current offense, it's 25 to life. If there's 10 current offenses... As a result of the priors. In other words, if he hadn't had the priors, the same 20 offenses could have been one, could have been concurrent rather than consecutive sentences. Oh, yes. If this defendant had no priors and he was convicted of 20 counts of whatever he was convicted of, he would have had to select a base term, which would have been one of commercial burglaries. And then the remaining counts could have been either consecutive or concurrent. I think that they probably would have been consecutive because there were different times and places, but that's totally discretionary in the trial judge's part. But there is discretion even in the three strikes context, Your Honor, under Romero, and it was a Romero hearing in this case. The priors could have been stricken as to some counts but not all. And the trial judge took a hard look at that. I mean, the defense attorney made a good pitch, the same pitch that we've heard here in court today. Long time between the strikes and the current offense, you know, he hasn't done that much lately, forget about the loaded firearm in public, and forget about the fact he was on probation at the time he committed these offenses also. That's something we haven't discussed yet. He was placed on probation in 1998. These offenses were committed in 1999. Going back very quickly to the Ramirez case, Your Honor, Ramirez said at the Romero hearing that he'd worked hard to turn his wife around, that he'd gone to school and that he bought two businesses, and that he was making ties to work with his family. In this case, the only showing we had in the Romero motion was, it's been a long time since my strikes, and hey, I'm a drug addict and I steal, but I haven't killed anybody yet. That was basically the pitch of the Romero hearing. I understand that, I'm sorry, that Mr. Ramirez personally argued his case in this court, and I think at the oral argument he said, you know, for me, prison was a spiritual healing time. I cured myself of addiction, and I kind of worked to clear my head when I was in prison. No showing of that in this case. All that we know about what the defendant's been doing in prison is using drugs that other, I assume other inmates have provided them, and they're not paying for them. But we've had no showing about any effort to turn his life around. This defendant, and there's some other things also that distinguish this case from Ramirez. There's no double whammy in this. Well, it's pretty hard for him to be thinking about that with 225 years. Well, Your Honor, he has a lot of time. He has a lot of time that he could think things over and try to turn his life around. People do it. He could always apply, you know, he could always apply for clemency. If he was a model inmate like Ramirez was, he could apply for clemency. There was no double whammy in this case, as was the case in Ramirez, where the priors also elevated the core misdemeanor conduct to a felony. That's not true here. But it is true that the priors were really one, were at two different events, but they were convicted at one time and sentenced at one time. They were brought in one proceeding, Your Honor, but they were two separate people's homes. Right. But that was true in Ramirez, too. Yes, it was, Your Honor. But the key thing to remember is, in Ramirez, that was the defendant's only criminal history other than the current offenses. And here, you look at this defendant. He's never gotten more than a couple years without being convicted of a crime. There weren't all felonies, and he never really hurt anybody. Again, I personally consider it fairly dangerous to be an ex-convict. I have a conceptual question about this. Why? I, do the courts, or did the Supreme Court in their recent cases look at, the entire criminal history as opposed to the strikes? And if so, what's the reason for that? Your Honor, I believe that in Ewing, the Supreme Court did say that you look at both the, the current offenses and the criminal history as a whole, not just the strikes. But that's a little peculiar because the state law doesn't do that. Oh, I disagree, Your Honor. I think that at the Romero hearing, I think a big part of that, what the sentencing judge has to consider is, well, we know the defendant has at least two counts, otherwise we wouldn't be talking about Romero. But I certainly think that a defendant's entire life is properly considerable. And this court- Because the trial court had the discretion to strike the priors and didn't on the basis of the whole criminal history. If there had, if there were no discretion that took into account the whole criminal history, then there might not, it might not be appropriate to consider it. But, but here it, it actually did feed into why he got this punishment. Yes, Your Honor. And all the reviewing courts that I'm aware of consider a defendant's entire criminal history. I'm just trying to find out why. It's just a little- Well, because, Your Honor, the whole thing about these statutes, I mean, sure, they look harsh on their face. 225 years to life and he broke into public storage lockers and he didn't hurt anybody when he was a drug addict. It sounds, it sounds, it sounds on the harsh end. But the point of these recidivist statutes is you look at the defendant's whole life, not just the prior strikes. But the point is- But it must be that you only look for criminal unusual punishment purposes at whatever it was the State court looked at. If the State court law precluded them from looking at their whole life, then there would be no point to doing it. But I think you've made that a good reason for doing it. Well, Your Honor, I know that the State court considered the defendant's entire- Yeah, I understand that. And I think that's probably adequate. I have the probation report here with me. And I mean, the defendant in the California court of appeal also, you know, which is in the excerpts of record, the California court of appeal cataloged his entire criminal history. And I certainly think that it's something that should be considered. I think that's probably. And I think that the lack thereof, I hate to speak on behalf of the court, because every time I do something bad happens. But in the Ramirez case, the court stressed, this defendant has a minimal criminal history. All he had was the two prior strikes and the current offenses. That's not true here. It wasn't true in Ewing, and it wasn't true in Andrade. Maybe their priors were worse, or maybe they weren't quite so bad as this defendant's. But this defendant had a lifelong, unrelenting history of recidivism. And the message that he sent to the court system, despite the fact he was given drug treatment, he was given diversion on another occasion, he was given probation on numerous offenses, as well as state, prison, and county jail several times also. But the one message this defendant said is, I ain't changing. As long as I'm free, I'm going to steal, and I'm going to use drugs. And that's the message that he sent. And he had numerous opportunities to try to turn his life around, and he didn't. And under AEDPA, which Judge Kleinfeld said in his dissent in Ramirez, he said that AEDPA is quite the standard. And he said that it's not enough if I were the sentencing judge, if I were the legislature, the key phrase is unreasonable. And in this case, the California Court of Appeal carefully considered this claim. The Court of Appeal's decision is 35 pages long, and carefully considered the Eighth Amendment claims. I think that when you look at the history of recidivism, and the number of current offenses, I think that the court's decision was reasonable. Mr. DePio, if I have no further questions, if I may. Thank you very much. Thank you. I'll be brief. I just want to address a few points made by opposing counsel and by Judge Berzon. I agree that it seems anomalous to look at the criminal history outside of the strikes, especially when it comes from probation reports, which have not been charged and proven, as they were not in Andrade. But I think it's quite right that the courts do, and the Supreme Court did. And I think that actually helps Mr. Skinner. It certainly helps distinguish Andrade. And as Judge Wardwell wrote in the Ramirez case, if you look at Andrade's criminal history outside of his first two strikes, he was in and out of state and federal prison since 1982. He had escaped from federal prison. He had been convicted to prison terms of 10, 8, and 6 years. It's true that Mr. Skinner has a number of other convictions. They are misdemeanors. If the state had thought they were very serious crimes, they would have charged them as felonies, but they're not. Also responding to opposing counsel's characterization of the first strike offenses, these were residential burglaries. If the state had thought they were serious crimes, they would not have sent him to rehabilitation instead of sending him to prison. So I think we have to look at how the state and how the courts treated these offenses and not speculate about what mayhem might have occurred in our imaginations. So I do think, again, that Ramirez may provide a better way of distinguishing Andrade than I did before when you rightly corrected me, Judge Berzon. And at page 11 of my opening brief, I discuss how Ramirez treated the Andrade case, and I think there are critical things in there. On the tolling question, as I understand opposing counsel's argument, because Mr. Skinner was in administrative segregation for a part of that time because of his own drug bits, he's not entitled to a 12-month statute of limitations. By that reasoning, someone who misbehaved in prison could be denied the right to appeal his sentence because he's deprived from a law library. And that's absolutely true. I understand the distinction that's being made, and it's an interesting one, is that he asked to be in administrative segregation. He asked to be in administrative segregation so that he wouldn't be killed. And he has a right to be saved. If you look at pages 86 to 106 of the Respondent's Excerpts of Record, you will see that the prison found that his fears were well-founded, that he was in danger, and that their decision as to how to make him safe was to deprive him of access to the law library. If they had wanted to put him in administrative segregation and have someone run up and down to the law library and give him the books they needed, he would not have an equitable tolling claim. The point is that he was deprived. And it's clear from the record that he had no access to it. It is clear from the record, again, pages 86 to 106 of the Respondent's Excerpts of Record, as well as his own motion for enlargement of time and his traverse to the motion to dismiss, where under your decision in laws, you can treat his verified petition as an affidavit. So there's evidence there as well. Finally, on the relief. Again, the result of a ruling in Mr. Skinner's favor will not be his release. What this Court can do on habeas is not dictate what the constitutional sentence would be, but simply to say that under clear and controlling Supreme Court authority, a sentence of life without parole for this collection of nonviolent theft offenses violates the Constitution. There's any number of ways that the State, on remand, could make this a constitutional sentence. If they struck one of the prior offenses, his term would be between 16 and 20 years. If they got rid of the consecutive sentences, perhaps he would get a sentence of 25 to life. And there might be proceedings as to whether that's constitutional, but I don't think this Court needs to decide that in this case. And if there are no further questions, I'll submit. Thank you. Take a break. Well, we've lost our audience. We're going to take a short break. Two more cases. We'll come back.
judges: Hug, Pregerson, Berzon